## New England Yearly Meeting of Friends *vs.*
## Henry Franklin Anthony *et al.*

DECEMBER 10, 1962.

PRESENT: Condon, C. J., Roberts, Paolino, Powers and Frost, JJ.

Powers, J.   This is a bill in equity for the construction of the will of Benjamin Franklin Knowles, late of the city of Providence, deceased, and for instructions to the trustees thereunder.   When the cause was ready for hearing for final decree in the superior court it was certified to this court for our determination in accordance with G. L. 1956, §9-24-28.

The following facts, among others, appear from the bill of complaint, the answers thereto, the exhibit and the testimony in the superior court.   By will dated May 7, 1890 Benjamin Franklin Knowles, hereinafter referred to as the decedent, bequeathed certain personal property in trust to the Yearly Meeting of Friends for New England, the then name of complainant, a consolidated religious corporation incorporated under the laws of the states of Rhode Island, Maine and the commonwealth of Massachusetts.

The complainant was designated as trustee by the seventh clause of decedent's will, which clause also bequeathed certain specified personalties and reads in part as follows:

"To the Yearly Meeting of Friends for New England, a corporation duly established under the laws of the State of Rhode Island aforesaid * * * the said donation and property to be invested and managed by a board of trustees to be appointed by said Yearly Meeting, but I hereby nominate the following persons to constitute the first board of trustees * * * the said persons with myself constituting at present the Trustees of the George Sturge fund, and it is my wish that said persons with the person appointed as my successor as Trustee of said Sturge fund shall be appointed by the said Yearly Meeting as the Trustees of this bequest as aforesaid, and I also give and bequeath to said Yearly Meeting the further sum of eight thousand dollars in money to be also invested and managed by the said trustees and their successors, it being my will that the said trustees shall be subject to the said Yearly Meeting and their successors appointed from time to time by said Meeting in the same manner as the trustees of said Sturge fund are under the direction of said meeting and are appointed from time to time by it. And it is my will that all the said property including all the said stocks and eight thousand dollars in money shall be in trust for the education of the colored people of the Southern States of the United States. And it is further my will that the income of all of said property and bequest except as hereinafter limited shall be used at the School of said Yearly Meeting at Maryville in the State of Tennessee said school being named and known as the Freedmans Normal Institute located at said Maryville but if any event by reason of obstructions makes it necessary to remove said school to some other location, all the said income is to be used on the said school in the same manner as if its location had not been changed. The said income to be used to the best advantage of said school wherever situated under the discretion of the aforesaid Trustees and their successors. But this bequest is made and all this property given in this clause of this will upon the express con-

dition that the said school shall continue to be under the charge and care of said New England Yearly Meeting of Friends or the Yearly Meeting of Friends for New England aforesaid and not otherwise."

The residuary clause provided as follows:

"All the rest and residue of my property and estate I give and bequeath to said Yearly Meeting of Friends for New England to be held in trust for the use and benefit of the said Maryville School as set forth in the Seventh item of this will, the income to be used in the discretion of said trustees therein described in the same manner and to the same effect as the income of the donation and bequest given in said Seventh item of this will. It being my intention to add the income of this bequest to the income of that bequest to the same use and purpose and benefit of said School."

The will made provisions for a brother John, a sister Mary and three grandchildren, Henry F. Anthony, Alice E. Anthony and Emily F. Anthony. None of the aforementioned next of kin could be traced by complainant and by order of the superior court due notice was given of the pending proceedings by publication in the Providence Journal, said notice appearing weekly for two successive weeks.

No answer was filed by any next of kin as respondent, but the attorney general, having been duly served, answered that he had no knowledge or information as to the truth of the allegations set forth in the bill of complaint and left complainant to its proof. He conceded that if the allegations in the bill were proved to be true, the relief prayed for was not contrary to the interest of the state of Rhode Island and submitted the rights and interests of the state, its citizens and the public to the protection and consideration of the court.

Adolph N. Anderson, Jr., the duly-appointed guardian ad litem for infants under the age of twenty-one years, others who may be necessary parties, and future contingent interests of unborn issue who may have an interest, in his answer submitted their interests to the care and protection

of the court. He filed a similar answer as the attorney representing those respondents, if any, who may be in military or naval service. Mr. Anderson advised the court that he had made a reasonably thorough search and was unable to determine the existence or whereabouts of any respondent who might have an interest in the proceedings. On behalf of such interest as he might represent, however, he joined with complainant in its prayer for certification and construction.

A decree pro confesso was entered against those respondents failing to answer. Thereafter complainant filed a replication averring that it stood ready to prove each and every allegation of its bill of complaint.

Amy Sherman Hayden, chairman of the Freedmans committee, New England Yearly Meeting of Friends, testified that complainant corporation was organized for the purpose of allocating the income of trust funds for the education of negroes in the southern states; that she was familiar with the terms of decedent's will; that complainant had disposed of the Freedmans Normal Institute in 1904; and that thereafter until 1955, on the advice of counsel, complainant had allocated the income from the trust created by decedent to the education of southern negroes.

The trial justice entered an order of certification and pursuant thereto the pertinent papers in the cause were duly forwarded to this court. The question which has arisen over the proper construction of the seventh clause, *supra*, may be stated as follows: Does said clause disclose a general charitable intent which would control the disposition of the trust fund therein created after the specific charity therein named had ceased to exist?

The complainant contends that from the language of the clause and decedent's membership in complainant corporation, together with his knowledge of its charitable purposes, there is evidenced a general as distinguished from a special charitable intent. The complainant argues in effect that

the designation of Freedmans Normal Institute as direct beneficiary was but a mode by which decedent provided for the carrying out of his dominant intent, contrasting his obvious familiarity with complainant against the unlikelihood that decedent had any personal knowledge of the institution in Tennessee.

It argues further that the gift was made to complainant as trustee with the income therefrom to be devoted to the use of Freedmans Normal Institute, but only so long as the institute should be under the charge and care of complainant. At the very least, complainant contends, decedent's intent is doubtful and that equity favors in such a case a construction which is in aid of public charity, citing *Rhode Island Hospital Trust Co.* v. *Williams,* 50 R. I. 385, and other cases.

We agree with the broad principle therein stated, but mere doubt is not sufficient if from the language employed by the decedent and such extrinsic facts as may be properly considered no argument can be advanced in support of a charitable intent. See *Gladding* v. *Saint Matthew's Church,* 25 R. I. 628. In the instant cause, the decedent, although by express terms bequeathing certain personalty to complainant as trustee, further provided in the seventh clause: "But this bequest is made and all this property given in this clause of this will upon the express condition that the said school shall continue to be under the charge and care of said New England Yearly Meeting of Friends or the Yearly Meeting of Friends for New England aforesaid and not otherwise."

Thus it would appear that the condition stated was a limitation upon the gift to complainant as trustee, evincing a special charitable intent and not merely a mode by which the trust was to be administered as contended by complainant. Standing alone, the limitation would more reason-

ably lend itself to a conclusion that Freedmans Normal Institute was intended to be the beneficiary of a specific charitable bequest rather than a mere conduit by which decedent's interest in the education of the southern negro might be advanced.

There are, however, extrinsic factors appearing in the record which tend to detract from the seeming force of the limiting clause. It is established by the record that decedent actively participated in the affairs of complainant corporation, serving as a trustee on one of its boards. In this connection it is not without significance that the first reference by decedent to those who should benefit by his bounty is identical with the purposes for which complainant corporation was organized, namely, the education of the colored people of the southern states in this country.

Moreover, if decedent's dominant intent was to provide primarily for the advancement or support of Freedmans Normal Institute in Tennessee, it is not likely that his largess would have been conditioned upon complainant's continued domination of the Maryville institute. The decedent was careful and foresighted enough to protect the institute from loss of the trust income in the event that it became necessary to relocate it in some other part of the country. It would seem that if he had intended his expressed interest in the education of the southern negro to terminate with a collapse of relations between it and complainant, he would have been careful to say so explicitly.

We are persuaded, therefore, that in the special circumstances of the phraseology adopted by decedent, considered in the light of the circumstances appearing in the record, the trust established in the seventh clause of his will, enhanced by the residuary clause, does evince a general charitable intent so as to warrant an application of the cy pres doctrine.

On December 19, 1962 the parties may present to this court for approval a form of decree, in accordance with this opinion, to be entered in the superior court.

*Swan, Keeney & Jenckes,* for complainant.

*J. Joseph Nugent,* Attorney General, *Harold S. Moskol,* Special Assistant Attorney General, for State.

*Adolph N. Anderson, Jr.,* guardian ad litem.